### CLARKE *et al. v.* EAST ATLANTA LAND COMPANY.

1. A petition setting forth facts entitling the plaintiff to the reformation of a described instrument, and praying for such relief in case the court should hold the same to be necessary, is, though the main object of the petition was to invoke other relief to which the plaintiff was not entitled, amendable so as to amplify and make complete that branch of the case relating to reformation.

2. A ground of demurrer to a petition, which assumes that it contains an allegation of fact which it does not contain, is "speaking" in character, and therefore not maintainable. Thus, where an equitable petition to construe or reform a deed which had been executed by a deceased person as trustee alleges nothing with respect to the appointment of a successor to the trustee, it can not, by way of demurrer, be assumed that a successor has in fact been appointed.

3. Objections to evidence made jointly by several parties were not well taken when the same was, as to any of them, admissible. The evidence thus objected to in the present case was certainly admissible as to all save one of the objecting parties ; and even if not so as to her, its introduction did her no injury.

4. The trust created by a deed conveying realty to a husband as trustee for his wife and their children, born and to be born, is not, as to her, executed eo instanti upon its creation ; nor can it, either as to her or an adult child, become executed while the coverture exists and any child of the trustee and his wife is still a minor, or there is a possibility of further issue of their marriage ; and where such a deed embraces a power of sale, the trustee may lawfully execute it so long as the trust remains executory.

5. The signing by the wife of a deed executed by such a trustee, whereby he, with her knowledge, intended and undertook to convey to another in fee the entire title to such realty, and wherein there was a recital of a provision in the deed creating the trust requiring her written consent to the exercise of the power, would sufficiently evidence such consent to its execution; and if a deed executed by the trustee with such intention and signed by her with such knowledge did not set forth the real contract between him and the grantee, a due reformation of the instrument would give to it, as reformed, full force and effect, not only as to the terms expressing that contract, but also as to the wife's assent thereto.

6. A deed wherein the maker is described as trustee for his wife only, and whereby he undertakes, as such trustee, to convey land, and which does not, as explanatory of his purpose or intention, refer to any other instrument, can not by construction be given the effect of executing a power of sale conferred upon him as trustee for his wife and children by a former deed from another to himself.

7. Reformation being the plaintiff's remedy in this case, and it having established its right thereto, the trial should have resulted accordingly.

Argued January 5,—Decided March 26, 1901.

Equitable petition.    Before Judge Lumpkin.    Fulton superior court.    May 8, 1900.

*Westmoreland Brothers*, for plaintiffs in error.
*Payne & Tye*, contra.

LUMPKIN, P. J.    On the 1st day of April, 1880, John H. James made a deed, describing certain land in Fulton county, to "Robert M. Clarke, trustee for his wife, Fannie Clarke, and the children she now has and may hereafter have by him." This deed purported

to convey the land "unto the said trustee and his successors in trust for the sole use and benefit of his said wife and children forever in fee simple, and with full power and authority in said trustee and his successors, upon the written consent of said Fannie Clarke, to sell said property, or any part thereof, at public or private sale, upon such terms as to such trustee [might] seem proper, without any order or proceeding in court, and to reinvest the proceeds of such sale in other property, in the discretion of said trustee, upon the same uses and trusts and with the same powers as appertain to the property hereby conveyed." Subsequently Robert M. Clarke executed and delivered to the East Atlanta Land Company a deed covering the property described in the above-mentioned deed from John H. James. This later deed, save as to a description of the property, which is omitted, was as follows: "Georgia, Fulton County. This indenture, made this 31st day of May in the year of our Lord one thousand eight hundred and eighty-nine, between Robert M. Clarke, trustee for his wife, Fannie P. Clarke (Mrs. Fannie P. Clarke, the 'cestui que trust,' consenting and joining in this conveyance with the conditions in 'trust deed' dated April 1st, 1880, recorded in Book EE, page No. 626), of the State of Georgia and County of Fulton, party of the one part, and 'The East Atlanta Land Company,' of the State of Georgia and County of Fulton, party of the other part, witnesseth: That the said party of the first part, for and in consideration of the sum of twenty-five thousand and no/100 dollars, in hand paid at and before the sealing of these presents, the receipt of which is hereby acknowledged, has granted, bargained, sold, and conveyed, and by these presents does grant, bargain, sell, and convey unto the said party of the second part, their successors and assigns, all that tract or parcel of land . . To have and to hold the said tract or parcel of land, with all and singular the rights, members, and appurtenances thereof to the same being, belonging, or in anywise appertaining, to the only proper use, benefit, and behoof of the said party of the second part, its successors and assigns, forever in fee simple. And the said party of the first part, for himself, his successors in trust, heirs, executors and administrators, will warrant and forever defend the right and title of the above-described property unto the said party of the second part, its successors and assigns, against the claims of all persons whomsoever. In witness whereof, the said party of the first

part has hereunto set his hand and seal, the day and year first above written.  R. M. Clarke, Trustee. (Seal.)  Fannie P. Clarke.  (Seal.)" The Land Company took possession of the property, and afterwards, to wit, on the 9th of November, 1891, Robert M. Clarke died, leaving his wife and six children surviving him.  Two of these children, after reaching majority, quitclaimed to the Land Company all their right, title, and interest in or to the premises described in the deed last mentioned.  In 1898 the Land Company filed an equitable petition against the other four children, and against Mrs. Clarke as the guardian of two of them who were minors, but she was not sued in her individual right.  After setting forth the facts above recited, the petition alleged, in substance, that the defendants, upon the theory that the deed executed by Robert M. Clarke did not pass to the company their interests in the land, were asserting title to the same, and that, as a result, there was a cloud upon the plaintiff's title.  The petition invoked a construction by the court of this deed, and in this connection the plaintiff prayed for a judgment declaring that it had, as against the defendants, a perfect title to the land.  The last paragraph of the petition was in the following words:  "If it be necessary to reform and correct said deed executed as aforesaid by Clarke as trustee for his children to your petitioner, it is further prayed that this court by virtue of its equity power do so reform said deed as to make same comply with the actual intention of all the parties hereto, and that petitioner may have all the proper and equitable relief as may be required in the premises, and petitioner will ever pray."

Subsequently the plaintiff filed an amendment to its petition, setting forth more fully the grounds upon which it claimed that the deed from Clarke should be reformed, and repeating the prayer for reformation.  This amendment was allowed over objections based on the grounds that there was nothing in the original petition to warrant such an amendment, and that it set forth a new and distinct cause of action.  Thereupon the defendants filed a demurrer in the following words:  "Not waiving their oral demurrer to the complaint, nor their objection to the amendment this day allowed, [the defendants] demur to the complaint as amended, on the ground that it does not state a cause of action.  They further demur on the ground that there is a defect of parties defendant, neither the trustee nor his representative nor Mrs. Fannie P. Clarke being made

parties defendants." The court then passed an order overruling this demurrer, "except so much as asks that Mrs. Fannie P. Clarke be made a party defendant." Mrs. Clarke was thereupon made a party defendant in her individual name and right, and the case proceeded to trial upon the petition as amended, and an answer filed by the defendants originally named, denying all of the plaintiff's allegations, and setting up that each of them was entitled to an undivided one-seventh interest in the land in dispute. So far as appears, Mrs. Clarke did not, in her individual capacity, seek to interpose any defense, either by filing a separate answer or one adopting that which had been filed by her codefendants. During the progress of the trial, all of the defendants joined in presenting a second demurrer in the words following: "Defendants further demur to plaintiff's complaint and amendment, on the ground that there is a defect of parties defendant, neither the trustee nor his successor being made a party to said suit as a defendant, the legal title to said property being in the trustee or his successor, under the deed creating the trust." This demurrer was disposed of by an order in these words: "A demurrer having been made and overruled (except as to one ground which was cured by amendment), and the case having proceeded to trial on evidence for a large part of a day, and it having been alleged and appearing that the trustee died some years since, and it not being alleged or proved that there is any successor, this demurrer is denied and overruled. March 20, 1900." It appears that the plaintiff, in support of its petition as amended, introduced in evidence the two deeds hereinbefore referred to, and proved by uncontroverted testimony that the contract between it and Clarke, the trustee, which his deed purported to evidence, was for the purchase of the entire estate of all the cestuis que trust in the land described, and that Mrs. Clarke fully understood and consented to the contract as thus made; and also, that it was the intention of the parties that the same should be set forth in the Clarke deed. Objection was made by defendants' counsel to the introduction of certain testimony, the particulars as to which will be presently stated. No evidence was introduced in behalf of the defendants. At the conclusion of the testimony offered by the plaintiff, the court directed the jury to return the following verdict: "We, the jury, find for the plaintiff. We find that plaintiff acquired a good fee-simple title to the property in dispute, by virtue of the

conveyance executed to it by the trustee, bearing date May 31, 1889, and that the title to same be quieted and confirmed." Upon this verdict the following judgment was entered: "Whereupon it is ordered, adjudged, and decreed that the deed executed by Robert M. Clarke, trustee, and Fannie P. Clarke, of date May 31, 1889, to the East Atlanta Land Company, conveyed the full and complete title in fee simple to the property described in said deed to plaintiff, East Atlanta Land Company, and the title to the same is hereby confirmed and quieted in said plaintiff, East Atlanta Land Company. It is further decreed that plaintiff recover of defendants ............ dollars, the cost of this proceeding. In open court, March 20, 1900." The defendants sued out a bill of exceptions and brought the case here. The questions thus presented for our determination and our rulings thereon are sufficiently indicated by the propositions laid down in the headnotes.

1. A casual reading of the foregoing preliminary statement will suffice to show that the court did not err in allowing the amendment to the plaintiff's petition. Had the same been entirely silent with reference to the subject of reformation, the objection would doubtless have been meritorious. See *Hairalson* v. *Carson*, 111 *Ga*. 57, 59, and cases cited. But as the petition as originally filed not only set forth facts entitling the plaintiff to equitable relief in the form of reformation, but contained a distinct prayer therefor in case the court should hold the same to be necessary, we are of the opinion that the plaintiff had a right to amplify and make complete this branch of its case.

2. The bill of exceptions complains of the action taken by the court upon the first demurrer, as follows: "Plaintiffs in error excepted to the ruling of the court refusing to sustain said demurrer, and now except and assign the same as error, on the ground that the trustee was a necessary party defendant to said case, and it was error to proceed with said trial without him or his successor being made a party defendant." The exception to the court's refusal to sustain the second demurrer is thus phrased: "Plaintiffs in error say that the judgment overruling this demurrer is error, and excepted thereto and now except and assign the same as error, because the trustee was a necessary party to said case. As the pleading then stood, plaintiffs in error then contended that it was an effort to prove a mistake between the East Atlanta Land Com-

pany and R. M. Clarke, trustee, and reform a contract made by him; and before that could be done, he or his successor in trust was a necessary party." It will thus be seen that, in assigning error upon the disposition which the court below made of the two demurrers, the bill of exceptions presents no point except that the petition was defective in failing to name as a party defendant either the trustee "or his successor." While the first demurrer does set forth that "neither the trustee nor his representative" was made a party defendant, the bill of exceptions does not complain of a failure by the plaintiff to name as defendant a "representative" of Robert M. Clarke. Dealing with the assignment of error actually made (and we can not properly do otherwise), the attack upon the petition is narrowed down to the objection that it did not name as a party defendant either the trustee or "his successor." There is an all-sufficient and apparent reason for not naming the trustee, viz.: he had, as shown by the petition itself, died before it was filed. As regards "his successor," the demurrers have the vice of assuming that there was such a person. With respect to this matter the petition is silent. It is the office of a demurrer to deal with the sufficiency of allegations actually made. Beyond this it can not properly go. Whenever a demurrer alleges, or assumes the existence of, a fact not set forth in the pleading which it seeks to attack, it becomes "speaking" in character, and this is never allowable. The demurrers with which we are now dealing are plainly of this nature, for they proceed upon the naked and unwarranted assumption of fact that there was a successor to Clarke as trustee, and complain that the plaintiff did not make him a party to the case. It is evident from the recitals contained in the order passed by the able trial judge in overruling the second demurrer that he was influenced by the same line of thought as that indicated in what is said above.

3. A portion of the evidence introduced by the Land Company in making out its case consisted of the testimony of certain witnesses taken by a commissioner appointed for this purpose. At that time, the petition had not been amended, nor had Mrs. Clarke been made a party in her individual capacity. . This testimony when offered was objected to on the ground that the petition as it stood at the trial made a materially different case from that set forth in the petition as originally filed, and on the further ground that when the

testimony was taken Mrs. Clarke was not a party in her individual capacity, and had not, as such, been afforded an opportunity to cross-examine the witnesses. These objections were made in behalf of all the defendants, and did not present the point that the evidence was not, for the reasons stated, admissible against Mrs. Clarke in that capacity. Clearly it was so against the other defendants. It requires no argument to show that this joint objection was not well taken. Were it otherwise, Mrs. Clarke was certainly not injured by the admission of this evidence. As we have attempted to show, the amendment to the petition did not introduce a new and distinct cause of action; and as Mrs. Clarke did not in her own behalf interpose any defense to the action, no injury could possibly have resulted to her from admitting the testimony. In her capacity as guardian, she had previously had full opportunity for cross-examining the witnesses, and their testimony was certainly admissible as against those of the defendants who were parties at the time the same was taken.

4. The trust created by the deed from John H. James to Robert M. Clarke was not, as to Mrs. Clarke, executed eo instanti, nor had it become executed at the date of the conveyance by Clarke to the Land Company. Had Mrs. Clarke been the sole cestui que trust named in the James deed, and at the time of its delivery of full age and capable of managing her own affairs, the trust would, of course, have become immediately executed by operation of law. But she was not the sole beneficiary, for the trust was created for the benefit of herself and her children by the trustee, including those already in existence and those to be born. Of a deed creating just such a trust, Bleckley, J., in *Boyd* v. *England,* 56 *Ga.* 599, said: "There can be no doubt that the trust raised by the deed was executory, and that it would so remain while the coverture subsisted and the children were minors." Applying this remark to the facts of that case, he added: "It follows that there has been no vesting of the legal title in the beneficiaries, for the coverture is not at an end, nor have the children attained majority. It may be that more are yet to be born." At the time Clarke conveyed to the Land Company, the coverture was still subsisting, there were minor children, and it did not then appear but that others might be born to Mr. and Mrs. Clarke. In *Parrott* v. *Dyer,* 105 *Ga.* 93, this court ruled that under a deed conveying land to a woman in trust for the

joint use and benefit of herself and her minor children, and embracing a power of sale, the trust became executed "upon the arrival of the minor beneficiaries at majority." The conveyance was to Narcis Dyer, "as trustee, in trust for the use and benefit jointly of herself" and her children by a deceased husband. Commenting upon it, Mr. Justice Little said: "It is fair to assume that, at the time of the execution of this deed, the children referred to were minors, and such we presume was the case. If not, then immediately on the execution and delivery of the deed, the children referred to took a fee in the land as tenants in common with Narcis Dyer. Assuming, however, that they were minors, then the beneficial interest in the land described in the deed was in the children, the trustee holding the legal title for them." (Page 96.) He also remarked (p. 97): "When the trust became fully executed by the arrival at majority of the beneficiaries, the power of sale given to the trustee could not thereafter be exercised." In further support of the proposition that, in the present instance, the trust remained executory and that the legal title continued in the trustee until he sold to the Land Company, see *Sanders* v. *Houston Co.*, 107 *Ga.* 49, which is closely in point. If the trust was then executory, there can be no doubt of Clarke's right to execute the power given to him by the James deed. The following cases throw additional light both upon the nature of the trust and the trustee's authority to execute the power: *Headen* v. *Quillian,* 92 *Ga.* 220; *Henderson* v. *Williams,* 97 *Ga.* 709; *Simmons* v. *McKinlock,* 98 *Ga.* 738; *Bailie* v. *Association,* 100 *Ga.* 20; *Cabot* v. *Armstrong,* Ibid. 438; *Riggins* v. *Adair,* 105 *Ga.* 727. We are fully satisfied that our fourth headnote lays down well-settled rules of law.

5. The fact that Mrs. Clarke signed the deed executed by Robert M. Clarke to the Land Company, in connection with the recital therein of her "consenting and joining in this conveyance with the conditions in" the deed from James to Clarke, would, beyond question, have been sufficient to evidence her written consent to the execution of the power conferred by the James deed, if Clarke's deed to the Land Company had unequivocally purported to convey to it in fee the entire title to the realty described in the deed creating the trust. In that event, Mrs. Clarke would certainly have known that her husband was intending and undertaking to execute that very power, and she could not more unmistakably have signi-

fied her consent to his so doing than by affixing her signature to his deed. This proposition is, to our minds, too plain to require argument. It is equally clear that if, as was from the evidence manifestly true, this deed did not set forth the real contract between Clarke and the Land Company, and Mrs. Clarke knew when she signed the deed that its real purpose was to invest the company with complete title to the land, a due reformation of the conveyance would relate not only to grantor and grantee, but to Mrs. Clarke as well, and would result in clothing the company with such title.

6. Apparently the trial judge directed the verdict above copied upon the idea that the deed from Clarke as executed passed to the Land Company a perfect title to the property therein described. In this view we can not concur. The only reference in that deed to the James deed is that which pertains to Mrs. Clarke's consent to the exercise by her husband of the power of sale conferred upon him by the latter instrument. This reference may, as above shown, properly be looked to as throwing light upon her intention in joining with him in the conveyance made to the Land Company; but as the James deed is not referred to as explanatory of Clarke's intention in the premises, we are of the opinion that his deed, in so far as it relates to his action, must be construed according to its own terms with regard to the capacity in which he undertook to act. It is not in this respect ambiguous, but expressly recites that he assumes to act in his representative capacity as "trustee for his wife, Fannie P. Clarke." Had he made no reference to his fiduciary relation, extrinsic evidence going to show that he had in his individual right no interest in the property, but held it as trustee for his wife and children, might be received as affording proof of an unexpressed intention to exercise the power conferred upon him by the trust deed. See *Terry* v. *Rodahan*, 79 *Ga.* 278. Since, however, he did undertake to state in what capacity and for whom he acted, it will not do to say that his deed on its face discloses an intention to represent any person other than his wife, nor that his purpose necessarily was to exercise his power of sale in the manner prescribed in the James deed.

7. It results that if, as matter of fact, the real contract entered into between Clarke and the Land Company was that he should sell and it should buy the interests of all the beneficiaries in the land, and if it was really the intention of the parties that his deed should

express and effectuate this contract, the instrument undoubtedly needs reformation. As above stated, the plaintiff made out a case entitling it to such relief. We therefore think the only error committed by the trial judge was as to the form of the verdict which he directed the jury to find. He should have directed a verdict which by its terms would have authorized the entering of a judgment reforming the Clarke deed so as to make it speak the real intention of the parties. As the direction to the jury was erroneous, and proper exception thereto was taken, we feel constrained to reverse the judgment. Though the plaintiff, at the time the case was ready for submission to the jury, was clearly entitled to a verdict which would have warranted and required the entering of a judgment reforming the Clarke deed in accordance with the prayers of the petition, it was not entitled to the verdict rendered. The defendants have an undoubted right to prevent the plaintiff from obtaining against them relief which could not be properly granted, and it makes no difference that the relief which the plaintiff ought to have had would, as effectually as that actually received, have disposed of the defendants' claims to interests in the land in controversy. Accordingly, we adjudge that there must be a new trial; and the same should be conducted in the light of what is herein laid down.          *Judgment reversed. All the Justices concurring.*